Curia, per Savage, Oh. J.
The principal questions are, 1. Was there a refusal by the bank to redeem their bills on demand ? and 2. If a refusal, was the tender sufficient? Another question may arise, as to the rate of interest which the plaintiff is to recover, if any; and also, whether the judge ought not to have received evidence of the fact, that the plaintiff and other persons had entered into a combination to run the bank; and that the whole of the money belonged to the same fund. If this fact, ^however, be admitted, it does not excuse the defendants from diligence in paying out specie for their bills; and if the fact be otherwise, and no connection exists between those persons who presented bills for redemption, if it was impossible for the officers of the bank to pay out to all who called, they could' not be said to have refused payment to those who did not actually receive it, provided the office hours of the bank were diligently employed in making payment to those who W;ere first entitled by priority of demand.
It can be of no importance, therefore, whether there was a combination or not. The question is, whether the defendants did their duty under existing circumstances ?
The 10th section of the act incorporating the defendants, enacts, that if, at any time, the defendants shall refuse, on -demand being made at their banking house, during the regular hours of doing business, to redeem, in specie or other lawful money of the United States, their said bills, notes or other evidences of debt issued by the said company, the said president, directors and company shall, on pain of forfeiture *96 of their charter, wholly discontinue their business by way of discount, and close their banking operations, until such ' ,, . „ . , , time as they shall resume the payment of specie; and they Pa.7 an interest on all sums demanded, and not paid in specie on demand, at the rate of 14 per cent, per annum, until the same shall be paid, or tendered to b,e paid in specie at their banking house; and in ease the president, directors and company shall not, within sixty days after ■ such demand and non-payment, pay the same with the interest aforesaid, or make tender thereof in specie at their banking house, their charter shall from thence be null and void, except for- the purpose of doing and settling their concerns.” By the 8d section of an act relative to banks, passed April 21, 1818, it is enacted, “That in case any incorporated bank shall refuse to pay any of its bills or notes hereafter to be issued, in lawful money of the United States, on demand, the holder of such bills or notes shall be entitled to recover the amount thereof in an action on the case for *money lent, with interest thereon, at the rate of 10 per cent, per annum, from the time of such refusal, with costs,”
1. Did the omission to pay, on demand being made, amount to a refusal ?
Very few cases are to be found relating to this point. We have been referred to but two: The first is the case of Gilbert & Dean v. The Nantucket Bank, decided in 1808. (2 Am. Law Journ. 107.) The plaintiffs sent a thirty- dollar bill to the bank for payment. The teller did not actually refuse; but he wasted the time in counting sixpenny- pieces, examined each minutely to see whether they were not five cent pieces ; then added up a sum in arithmetic to ascertain whether sixteen of them wore equal to a dollar. One witness attended 17 days to get 472 dollars, which was counted in less than half an hour in one of the Boston banks. This was held, by the court and jury for Suffolk county, (Mass.,) a refusal to pay, and the plaintiffs recovered. The next case is The Suffolk Bank v. The Lincoln Bank, decided in May, 1821, (U. S. C. C. Maine;) The plaintiffs claimed 3,000 dollars, and damages at 2 per cent, a month, imposed by a law -of Massachusetts on such banks as refuse or neg *97 lect to pay their bills on demand. The plaintiffs’ agent demanded payment at the bank. . The cashier offered to pay immediately in Boston bills, part of which were on the Suffolk bank, or in a draft on Boston, which was declined, and specie demanded. The cashier began to count change. He was occupied till near the hour of closing, in counting 500 dollars. He tendered no gold, nor more specie than about 1,000 dollars, which could not have been counted within the bank hours. The agent offered to take specie at the bank count, but the cashier declined, and the agent left the bank and prosecuted. Judge Story pronounced the law to be this: that a demand of ordinary magnitude against a bank ought to be paid within the banking hours of the day on which it is made; and if not, that is such a refusal or neglect as is contemplated by the law. That the plaintiffs were not obliged to take Boston bills, or even their own bills; but might demand specie. That no *man who presents bills at a bank, should be delayed on any pretext whatever; that, it is the duty of banking institutions either to have sums counted, or to have servants sufficient to count them out in a reasonable time. He instructed the jury to inquire whether the sum mentioned could reasonably have been paid within the banking hours of the day on which it was demanded; whether the defendants had unreasonably delayed payment; and whether such delay did not amount to such refusal or neglect as was intended by the law. The jury returned a verdict for the plaintiffs.
The question in the cases just cited, was the same with, that now under consideration ; was there reasonable diligence? Or was there unreasonable delay? The answer must depend on the circumstances of the case. The rule laid down by Mr. Justice Story, no doubt, is the correct one; that banks should have sums counted, or sufficient servants to count them, so that a demand of ordinary magnitude may be paid within the banking hours of the day.. The facts necessary to be noticed are few. The plaintiff demanded 1,000 dollars; the teller, with more than 10,000* dollars specie in boxes, commences by selecting the small, pieces to make payment with; thereby adopting the most *98 *ar^y and'tedious mode in Ms power. The plaintiff .offers to take a box at the bank mark. This. could.-easily have been complied- with by the bank without loss. The- marks must have been,the marks of the Utica bank; and if there was any..error, the loss would'have fallen.either .on,the .plaintiff or theUtica bank. When such an offer is refused, .and .the teller is unable to count 1,000 dollars in four hours, by reason of counting small pieces instead-of dollars, I •think the conclusion is inevitable, that there was a refusal redeem the bills, of. the bank in specie within the true construction of the act of incorporation. That unjustifiable means may have been resorted to by the?plaintiff and others associated with Mm, makes no difference, as to the duties and-liabilities of the defendants.
2. The next question is, have the defendants, made.a sufficient tender to the plaintiff of; the money d.ue him ? At *the common law, if a note be due and payable, and the party liable upon it wishes to save, interest and costs, .it is his duty to seek, the creditor, and offer, payment of the. amount due. Upon-demand -at the bank, these notes ;.were un-doubtedly due..and payable. Independent, therefore,-'of ...any-speciaL provision, if we consider bank motes as promissory notes, the plaintiff would be entitled to the amount of which payment had been demanded and ■ refused, with lawful interest, -until a tender-should be made, to him personally,-.or .the sum due for principal and interest, -and costs, if a suit had been brought. : By the act relative-, to -banks, and for other .purposes, passed the 21st of April, 1818, the same day on - which the act incorporating the defendants ■was passed, the. .interest upon bank notes not paid on deL-mand, is fixed-at ten per - cent. The .plaintiff, then, is -.entitled4o recover his principal and.ten per:cent, interest, unless his, rights .are in. this , case .differently modified by the act of incorporation. The tenth- section of that act was not .intended, as'I apprehend; to relieve, the bank from any duty otherwise obligatory upon them. It -seems to impose additional penalties, to wit: suspension of discounts, ■double interest, and forfeiture of their charter, as the; consequence of a refusal • to redeem ■ their bills on demand. *99 Payment or.tender of principal and interest, at the.bank, within sixty days, prevents the penalty of forfeiture from attaching; and, tender at the bank justifies discounts, and stops the accruing of 14 per .cent, interest. But does it stop interest altogether ? I think not. The court are bound so to construe the two statutes as .to give effect to both, if they are not plainly inconsistent. It seems to me they are not inconsistent. By the one, the plaintiff is entitled to his principal and ten per cent until he receives payment, or a tender is made to him personally. This act seems to define the rights of the creditor. -By the act of incorporation, fourteen per cent are given so long as the defendants refuse to pay specie; and. until they manifest their ability and willingness to do so by either paying the amount demanded or tendering it at the bank. To have imposed the burden of a tender to the person of the holder of the bills, as a condition of their ^resuming business, .would have been unreasonable, as he might not be known. Hence nothing is said in the act, of notice being given to the creditor of the tender at. the bank. And surely the legislature could not have intended to enable the bank, by a tender at. its own counter, to discharge itself from the payment of interest altogether. My .conclusion, therefore, is, that a tender at the bank will relieve against the payment of the fourteen per cent, interest, but not the ten per cent.
It becomes necessary, however, to inquire .whether, the tender was good for any purpose. The demand was on Friday, when interest commenced .running. The tender was on Saturday, and the notice on-Monday. The demand was of .1,00,0 dollars. The tender should of course,have been, of the same sum, and one .day’s interest; and if notice was necessary, of three day’s interest. ,-But as. .this tender is special under the.statute; and,.as I have endeavored to show, for the particular purpose of indicating the solvency of the bank, no notice was necessary, as none is required by the act.
How was the fact, then, as to. the .amount tendered? The teller swears expressly, that the amount tendered was 1,000 dollars in the box. On examination, however, it *100 was found to contain four dollars more , in change. • This might have been subsequently put in .by the" cashier, or 6 , , • 1 -j? ± • i_ l/ . , , . some other person: and it put m- by the teller, but not recollected, the fact might have been shown by the cashier. I think the fair and proper-inference is, that the box, when tendered; contained no more than 1,000. dollars. The evidence upon this fact should have been left to the jury; and I must say that the practice prevailing to a considerable ex tent, "and which seems to be increasing, of calling on this court to determine the fact as well as the law, is not only imposing" unneccesay burthen.*/on us; but is subversive of one of the fundamental principles of our judicial system.
But if the fact was other wise ; if the four dollars were actually in the box, then it is contended that the tender is bad, "as being for too much; that the precise sum must be ^tendered; as the creditor is not bound to give change. On this question, the 3d resolution in Wade's case, (5 Co. 115,) is in point: “that if a man tenders more than he ought to pay, it is good; for omne magus continetin se minus; and the other ought to accept so much of it as is due to him; quando plus fit quam fieri debei videtur etiam illud fieri quod faciendum est. M in majore summa’ coniinetur minor1''
This doctrine was held by Le Blanc, Justice, in Betterbee v. Davis, (3 Campb. 70,) applicable to a tender in coin, but not in a bank note. " A £5 note was offered to pay £3. 10. The reason assigned was, that if good, the tender might be made in such a way as to render it impossible for the creditor to take what is due, and return the difference; and the instance is given of a large note of £50,000. In Douglas v. Patrick, (3 T. R. 683,) a larger sum than was due was offered; and the court held the tender good; for a tender of the greater includes the smaller "sum. In Robinson v. Cook, (6 Taunt. 336,) this rule'seems not to be considered applicable where the tender was made in' bank notes; but the point was not passed upon by the court.
If, therefore, notice was necessary,- and the tender is not to be considered as made until Monday, still it was good, if 1,004 dollars were actually in the box; for the sum was sufficient; and the plaintiff’s refusing on the ground that he *101 had ordered a suit, constitutes no objection to the tender, as no suit appears to have been, at that time, actually commeneed. Briggs v. Calverly, (8 T. R. 629.)
The conclusions of my mind upon the facts, are, that the defendants did not use due diligence in making payment of their bills.when demanded; and that only 1,000 dollars were in the box when tendered at the bank. The latter fact is left somewhat doubtful; but the defendants might have removed all doubt by testimony in their power ; and have not done it. The legal presumption, therefore, is against them. My conclusions upon the law are, that the want of due diligence in redeeming their notes, amounted to a ^refusal within the meaning of the act; and that the tender was insufficient as to amount.
The consequence must be, that the plaintiff is entitled to recover the 14 per cent, interest; and must have judgment upon the verdict as found at the circuit.[1]
Judgment for the plaintiff.
Sutherland, J., not having heard the argument, gave no opinion.

 The true construction of the 11th section of the Maine statute of 1831, o. 119, to regulate banks and banking, is, that if the officers of a bank refuse or delay payment, in gold or silver money, of any bill demanded, and presented for payment at the bank, in the usual banking hours, the corporation is made liable, after fifteen days from such demand, to pay additional damages of twenty-four per cent, per annum. Bryant v. Damariscotta Bank, 6 Shep. 240.
From proof of a demand for specie for bills presented, the jury may infer that a demand was intended, and understood to be for such coin as constitutes a legal tender. Ib.
A demand of payment, merely, is sufficient, even if made by an agent, the agency being avowed and the principal disclosed. Ib.
The Ohio statute of 1839, for regulating banks, providing that, if any bank in the state shall suspend specie payment of its notes, it shall be the duty of the cashier to indorse the refusal upon any note presented for payment, subjects him to a penalty for refusing such indorsement. Held, in an action to recover the penalty for refusing to so indorse a note, that it was not sufficient to allege a refusal to pay the note, and a refusal to indorse the, demand and refusal on the note, but that it was necessary, also, to aver a general suspension of specie payments. Rockwell v. The State, 11 Ohio, 130.
In the year 1840, the Commercial Bank of Natohes, chartered previously, being in a state of suspension of specie payments, the legislature passed a *102 law that all the banks in the state, by the 1st of April, thereafter, should pay Speoie on their notes of $5; by the 1st of July, on their notes of $10; by the 1st of October; on their'fiote’s of $20; and by the 1st df Januaiy, 1841,-on all their notes, bills,-and other liabilities. Held, that this act wás coñstitutional and valid, and that a failure oh the part of the bank to comply with the provisions of the law would work a forfeiture of its charter. Commercial Bank v. The State, 6 Smedes & Marsh. 599.